TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00015-CR






Robert Dale Cox, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. CR-96-0348, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING







 After finding appellant guilty of theft of property (a tractor) of the value of seven hundred
fifty dollars or more but less than twenty thousand dollars, the jury assessed punishment, enhanced by prior
felony convictions, at seventy-five years. See Act of May 10, 1993, 73d Leg., R.S., ch. 203, § 4, 1993
Tex. Gen. Laws 390, 391 (Tex. Penal Code Ann. § 31.03(e)(4)(A), since amended). Appellant asserts
five points of error, contending that error occurred in the trial court because: (1&2) the evidence was
legally and factually insufficient to support the conviction; (3) the trial court failed to grant appellant's motion
for new trial; (4) appellant was deprived of the assistance of effective counsel; and (5) the sentence
assessed was in violation of article I, § 13 of the Texas Constitution. We will overrule appellant's points
of error and affirm the judgment of the trial court.

 Appellant asserts that the evidence is legally insufficient to establish an essential element of
the offense of theft, the intent to permanently deprive the owner of the property. See Tex. Penal Code Ann.
§ 31.03(a). In addition, appellant contends that the evidence is factually insufficient to prove the tractor's
fair market value was greater than $750.

 The testimony of Gertrude Klenhest, age 86, furnished the major portion of the State's
case. In July 1994, Klenhest felt she needed a carport. Appellant learned about the proposed project,
went to see Klenhest, and an agreement was reached whereby appellant would construct the carport for
$1,900 plus the necessary materials for its construction. At this initial meeting, Klenhest complied with
appellant's request for an advancement of $300 for materials. At their next meeting, again at appellant's
request, Klenhest advanced appellant an additional $500 for purchase of materials. Within a span of six
days from their first meeting, appellant asked for, and Klenhest gave appellant $550 for materials. Whether
by check or cash, all payments were made to appellant's wife, Penny. At trial, Klenhest identified the
material appellant had delivered as a "pile of junk."

 Klenhest stated that sometime between July 15, 1994 and July 20, 1994, appellant
approached Klenhest about taking her 1940 model John Deere tractor for his labor in lieu of the $1,900
agreed to in their contract. Klenhest told appellant that she did not want to sell the tractor because it was
a personal thing. Klenhest had acquired the farm and the tractor from a beloved cousin. In addition to its
functional use in farming, it had acquired a sentimental value since it had been used for hayrides thereafter. 
About July 20, 1994, appellant returned home from a doctor's visit to find the tractor missing. When
appellant came to Klenhest's home the next day, she confronted him about the tractor. Appellant assured
her that he would return the tractor. Klenhest did not see appellant again until the trial began in mid-September 1994.

 Approximately one month following the tractor's disappearance, Klenhest learned that the
tractor was stored at Saucedo's Wrecking Service. Klenhest paid Saucedo $150 for storage and
Doherty's Wrecking Service $50 for towing the tractor to her house. Klenhest was emphatic about having
refused to sell the tractor to appellant and having told him that it was not for sale at any price.

 Vincent Catron, brother-in-law to appellant, complied with appellant's request to go to
Klenhest's place to move the tractor. It was his belief that appellant had made a deal with Klenhest to
acquire the tractor, otherwise he would not have helped appellant. After picking up the tractor, it was
moved to appellant's place. When appellant moved from this location, the tractor was taken to his
brother's home in Liberty Hill. Appellant's brother refused to allow the tractor on his premises. Catron
could not remember if appellant had told him to return the tractor to Klenhest's house, stating, "I think so,
I aint for certain." Prior to appellant's move, Catron stated he told Deputy Sheriff David Peterson the
tractor was at the place where Catron was living. At a subsequent date, Catron remembered asking a
constable "with a bunch of laws up there" for directions to Klenhest's place, but he was never able to find
the way. Catron testified he had been to private mental hospitals twice and at a public mental institution
on one occasion. He was hospitalized because "I killed myself," almost killed his wife, beat up his daughter
and hit his brother. Catron stated he had memory problems. Catron was very nervous about testifying for
the State because of a phone call his wife received from her brother (appellant).

 Catron's wife, Violet, testified that her brother had his wife, Penny, call her two days prior
to trial and asked her to testify that her (Violet's) husband took the tractor. In return, Violet would receive
$1,000 for blaming her husband. The night before the trial, appellant called her and asked her to testify
at the trial and help him.

 Penny testified that Klenhest agreed to sell appellant the tractor at one point in time. When
appellant was shown the photograph labeled by Klenhest as a pile of junk, she stated that some material
had been removed when the photograph was taken. Also, some of the material appellant had purchased
for the project had been left at two other locations. Appellant did not finish building the carport because
"he was told by a deputy not to." Penny stated that she wanted her husband to go free. Under cross-examination, Penny testified that she was under two felony probations for offenses of writing a "1,000 hot
check" and theft of saddles.

 In reviewing the sufficiency of the evidence, we must determine whether, viewing the
evidence in the light most favorable to the prosecution, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319
(1979). Under the Jackson standard, the reviewing court is not to position itself as a thirteenth juror in
assessing the evidence nor is it our place to second guess the determination made by the trier of fact. See
Collins v. State, 800 S.W.2d 267, 269 (Tex. App.--Houston [14th Dist.] 1990, no pet.). The testimony
in this cause dramatically demonstrates why the trier of fact (jury in this cause) is in a better place than an
appellate court to weigh, accept or reject all or any portion of any witness's testimony. It is the duty of this
Court to determine if the explicit and implicit findings by the trier of fact are rational under legal standards
to support the conviction. See Aldeman v. State, 828 S.W.2d 418, 422 (Tex. Crim. App. 1992).

 Having reviewed the evidence in the light most favorable to the verdict, we hold that any
rational trier of fact could have found the elements of the offense beyond a reasonable doubt.

 Under this same point of error, appellant contends that the evidence is factually insufficient
to prove the essential element of intent. On appellate review, we may consider factual sufficiency as well
as legal sufficiency. See Stone v. State, 823 S.W.2d 375 (Tex. App.--Austin 1992, pet. ref'd untimely
filed); see also Clewis v. State, 922 S.W.2d 126 (Tex. Crim. App. 1996, adopting Stone test). In Stone,
this Court set the following standard for factual review.


[T]he court views all the evidence without the prism of 'in the light most favorable to the
prosecution.' Because the court is not bound to view the evidence in the light most
favorable to the prosecution, it may consider the testimony of defense witnesses and the
existence of alternative hypotheses. The court should set aside the verdict only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.



Stone, 823 S.W.2d at 38 (citations omitted).

 Being mindful that appellant made a challenge to the factual sufficiency on this element of
the offense, we attempted to include evidence favorable to appellant as well as to the State in considering
the legal sufficiency to support the verdict. Our review of all the evidence included evidence favorable to
appellant and the existence of alternative hypotheses. We hold that the verdict on appellant's contention
is not so contrary to the overwhelming evidence as to be clearly wrong and unjust. Appellant's first point
of error is overruled.

 In his second point of error, appellant contends that the evidence is legally insufficient to
prove the tractor's fair market value was greater than $750. Value is defined as the fair market value at
the time and place of the offense, or of replacing the property within the reasonable time. See Tex. Penal
Code Ann. § 31.08(a)(1)(2) (West 1994).

 Appellant urges that Klenhest was not qualified to testify as to value since she had never
bought or sold tractors. It is undisputed that Klenhest's sentimental attachment to the tractor has no
relevance to value; however, she testified that the value of the tractor as an antique would be "around
$1,500." An owner of property may testify to his or her opinion as to the value of property, without any
testimony relative to market value, since an owner who testifies as to value of property is presumed to be
testifying as to market value. See Sullivan v. State, 701 S.W.2d 905, 909 (Tex. Crim. App. 1986). We
would be remiss if we failed to note that appellant offered to take the tractor in lieu of the $1,900
contracted agreement.

 Gustav Schendler testified he had bought fifty-two antique John Deere tractors, the oldest
a 1931 model and the newest a 1959 model. Schendler had bought and sold John Deere tractors, had
personally attended auctions where these tractors were brought and sold, had read literature and
professional publications relating to antique tractors, was a member of the "Two Cylinder Club," and
subscribed to "Green Magazine," a John Deere enthusiast's magazine.

 Schendler stated he was familiar with fair market value. He explained that "utility value"
means something that you could use to plow the back forty. In addition, Schendler recognized that tractors
can have another value, "a collector type value." Schendler had inspected the vehicle in question. He
opined there was no question in his mind that the fair market value of this antique tractor was at least $750.

 Maurice Hilbert (a defense witness), a John Deer dealer in Seguin, testified he was more
knowledgeable with the "utility value" of tractors. However, his parts manager had sold a Model H (same
model as the one in question) in "a lot better condition" than the one in question for $250. While Hilbert
had not seen the tractor in question, he estimated its worth as $200 to $300 at the most."

 Viewing the evidence in the light most favorable to the jury's verdict, we hold that a rational
trier of fact could have found there was sufficient evidence to support a finding that the property in question
had a value of seven hundred fifty dollars or more but less than twenty thousand dollars.

 In the second portion of this point of error, appellant contends that the evidence is factually
insufficient as to the elements of fair market value. On appellate review, we may consider factual sufficiency
as well as legal sufficiency. See Stone v. State, 823 S.W.2d 375 (Tex. App.--Austin 1992, pet. ref'd
untimely filed); see also Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996, adopting Stone
test). In deference to the reader, we do not repeat the Stone test previously set out in this opinion.

 Being aware that appellant made a challenge to the factual sufficiency of the evidence to
support the jury's finding as to fair market value, we set forth evidence favorable to appellant as well as
evidence to support the verdict.

 We have reviewed all the evidence, including evidence favorable to appellant and the
existence of alternative hypotheses. We hold that the verdict on both of appellant's contentions is not so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Appellant's second
point of error is overruled.

 In his third point of error, appellant contends the trial court erred in failing to grant his
motion for new trial in light of the expert testimony that the tractor's value was less than $750. None of
the evidence, including testimony of witnesses and affidavits, was before the trial court during the trial on
its merits. Consequently, appellant had the burden of meeting the requirements of newly discovered
evidence in order for the evidence to have any probative value in the granting of a motion for new trial. See
Tex. Code Crim. Proc. Ann. art. 40.001 (West Supp. 1998).

 A concise statement governing an accused's burden of proof to warrant the granting of a
new trial based on newly discovered evidence is found in Hogan v. State:


[M]otions for new trial based on newly discovered evidence are disfavored and are
viewed with great caution. Drew v. State, 743 S.W.2d 207, 225 (Tex. Crim. App.
1987). We should not disturb a trial court's ruling on a motion for new trial based on
newly discovered evidence absent a clear abuse of discretion. Jones v. State, 711
S.W.2d 35, 36 (Tex. Crim. App. 1986). The Texas Court of Criminal Appeals has held
that a new trial is warranted based on newly discovered evidence only when the record
reflects that: (1) the evidence was not known to the accused before trial; (2) the failure to
discover the evidence was not the result of a lack of diligence on the part of the accused;
(3) the evidence would have been admissible, not cumulative, corroborative, collateral or
impeaching; and (4) the evidence would probably have brought about a different result. 
Moore v. State, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994), cert. denied, 513 U.S.
1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995).



See 943 S.W.2d 80, 83 (Tex. App.--San Antonio 1997, no pet.).

 Three witnesses testified as to their experience in buying and selling tractors and their
experience with antique tractors. In addition, appellant offered three affidavits under the provision of
former Texas Rule of Appellate Procedure 31(d). (1) The motion for new trial is devoid of any showing that
the accused was unaware of this evidence before trial, nor had appellant negated that the evidence resulted
from a lack of diligence on the part of appellant. Assuming these requirements had been met, a clear abuse
of discretion by the trial court is not shown. The trial court is in the best position to determine the materiality
of the evidence offered at the motion for new trial based on its determination of the credibility and weight
of the new evidence. See Wortham v. State, 930 S.W.2d 897, 899 (Tex. App.--Beaumont 1995, no
pet.).

 Applying the requirements necessary to merit a new trial based on newly discovered
evidence, we hold that the trial court did not abuse its discretion in overruling appellant's motion. 
Appellant's third point of error is overruled.

 In his fourth point of error, appellant contends that he was deprived of the effective
assistance of counsel in the trial court. Appellant alleges that his trial counsel was ineffective in that he failed
to: (1) object to the introduction of evidence regarding Klenhest's contract with appellant to build a
carport, admitting evidence of money paid appellant for materials and appellant's failure to build the
carport; (2) file a motion in limine to exclude extraneous evidence; (3) request a limiting instruction; and,
(4) request an introduction on "mistake of fact" based on his wife Penny's testimony that appellant
attempted to return the tractor.

 This Court reviewed the standard by which we judge whether a defendant received
reasonable assistance in Haynes v. State, 790 S.W.2d 824, 826 (Tex. App.--Austin 1990, no pet.):


In Strickland v. Washington, the Supreme Court held that in order to show ineffective
assistance of counsel, a convicted defendant must (1) show that his trial counsel's
performance was deficient, in that counsel made such serious errors he was not functioning
effectively as counsel, and (2) show that the deficient performance prejudiced the defense
to such a degree that appellant was deprived of a fair trial. In this connection, a strong
presumption exists that counsel rendered adequate assistance and made all significant
decisions in the exercise of reasonable professional judgment. "Prejudice," however, is
demonstrated when the convicted defendant shows a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceedings would have been different. 
"A reasonable probability is a probability sufficient to undermine confidence in the
outcome." No mechanistic formula was provided by Strickland. "The benchmark for
judging any claim of ineffectiveness must be whether counsel's conduct so undermined the
proper functioning of the adversarial process that the trial cannot be relied on as having
produced a just result."



 The constitutional right to counsel does not mean errorless counsel or counsel whose
competency is gauged by hindsight. See Ex parte Cruz, 739 S.W.2d 53, 58 (Tex. Crim. App. 1987). 
The standard of review for effectiveness of counsel is gauged by the totality of the representation of the
accused. Id.

 Appellant argues that evidence of appellant's failure to build the carport after having
received payments totaling $1,350 for what Klenhest characterized as a "pile of junk" that "was supposed
to be building material" constituted an extraneous offense. Appellant contends that such evidence was not
admissible since its only purpose was to prove character of appellant in order to show that he acted in
conformity therewith and sets the stage for the jury's comprehension of the whole criminal transaction. See
Stern v. State, 922 S.W.2d 282, 287 (Tex. App.--Fort Worth 1996, pet. ref'd).

 The alleged theft was so closely interwoven with the erection of the carport that the events
surrounding the building of the carport were essential to the fact-finder's understanding of the circumstances
of the charged offense. The entire transaction began when appellant approached Klenhest about her
projected project. Prior to the disappearance of the tractor from Klenhest's property, appellant had
expressed an interest in purchasing the tractor. The evidence of the extraneous offense "showed the
context in which the criminal act occurred --what has been termed 'res gestae.'" See Camacho v. State,
864 S.W.2d 524, 535 (Tex. Crim. App. 1993). Since the complained of evidence of an alleged offense
was admissible, trial counsel was not deficient in failing to ask for a limiting instruction. Id. 535.

 Appellant urges that Penny's testimony at the motion for new trial (the only witness to testify
at the trial on its merits) regarding appellant's understanding that Klenhest had offered to sell the tractor to
appellant raised the defense of mistaken belief. While trial counsel probably should have requested such
an instruction, he could have reasonably concluded Penny's testimony would have been undermined by
seeing her husband go free and Penny having had two felony probations.

 Viewing the totality of appellant's representation at trial, we hold that counsel's assistance
was within the reasonable range of assistance. Appellant's fourth point of error is overruled.

 In this fifth point of error, appellant urges that a seventy-five-year sentence for theft of a
tractor of dubious value is unconstitutional in that it is cruel or unusual in violation of article I, §13 of the
Texas Constitution. At the penalty stage of the trial, the jury answered true to allegations in the indictment
of four felony theft offenses and one felony criminal mischief offense.

 In asserting that his punishment is unconstitutional, appellant directs our attention to that
provision in the Texas Constitution prohibiting "cruel or unusual" punishment as being 'manifestly different
and broader' than the federal provision."

 Appellant urges the proportionality claim set forth in Solem v. Helm, 463 U.S. 277 (1983)
should be followed under the Texas Constitution. Hormelin v. Michigan, 501 U.S. 957 (1991) (filed to
reach a consensus on the issue of disproportionality of sentences leaving federal law in an unsettled state).

 Two Texas cases consider the proportionality claim under the Texas Constitution. See
Francis v. State, 877 S.W.2d 441 (Tex. App.--Austin 1994, pet. ref'd); Johnson v. State, 864 S.W.2d
708 (Tex. App.--Dallas 1993), aff'd, 912 S.W.2d 227 (Tex. Crim. App. 1995). Both Francis and
Johnson first recognized that punishment assessed within the limits prescribed by statute, as in the instant
cause, does not render punishment cruel or unusual under article I, section 13 of the Texas Constitution. 
Francis, 877 S.W.2d at 444; Johnson, 864 S.W.2d at 725. In Francis, the Solem proportionality review
was conditioned on such review being required by the Texas Constitution. 877 S.W.2d at 444.

 The punishment was within the limits prescribed by statute. Giving deference to stare
decisis and the legislature's authority to determine punishment for crime, we hold that the punishment
assessed appellant was not cruel and unusual under either U.S. Const. amend. VIII or Tex. Const. art. I,
§ 13. Appellant's fifth point of error is overruled.

 The judgment is affirmed.



 Tom G. Davis, Justice

Before Chief Justice Carroll, Justices Aboussie and Davis*

Affirmed

Filed: January 29, 1998

Do Not Publish








* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).
1. See current Texas Rule of Appellate Procedure 21.7.



>,
864 S.W.2d 524, 535 (Tex. Crim. App. 1993). Since the complained of evidence of an alleged offense
was admissible, trial counsel was not deficient in failing to ask for a limiting instruction. Id. 535.

 Appellant urges that Penny's testimony at the motion for new trial (the only witness to testify
at the trial on its merits) regarding appellant's understanding that Klenhest had offered to sell the tractor to
appellant raised the defense of mistaken belief. While trial counsel probably should have requested such
an instruction, he could have reasonably concluded Penny's testimony would have been undermined by
seeing her husband go free and Penny having had two felony probations.

 Viewing the totality of appellant's representation at trial, we hold that counsel's assistance
was within the reasonable range of assistance. Appellant's fourth point of error is overruled.

 In this fifth point of error, appellant urges that a seventy-five-year sentence for theft of a
tractor of dubious value is unconstitutional in that it is cruel or unusual in violation of article I, §13 of the
Texas Constitution. At the penalty stage of the trial, the jury answered true to allegations in the indictment
of four felony theft offenses and one felony criminal mischief offense.